## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CHRISTINE GONZALES**,

Plaintiff,

vs.                                        No. 1:07-cv-54 MCA/WDS

**KENNEDY McDOW, Sr., et al.**,

Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendants Bennett International Group, Inc. and Bennett Motor Express, Inc.'s Motion for Partial Summary Judgment* [Doc. 23], filed September 17, 2007. Having considered the parties' submissions,[1] the relevant law, and otherwise being fully advised in the premises, the Court concludes that the Motion should be **GRANTED**.

## I.    SUMMARY

The issue on this Motion is whether Defendant Kennedy McDow, Sr. was an employee or an independent contractor of Defendants Bennett International Group, Inc. and Bennett Motor Express, Inc. (collectively, "Bennett"). Ms. Gonzales alleges six claims[2]

---

[1] Ms. Gonzales originally responded on October 3, 2007 with a Rule 56(f) request for additional time to conduct discovery. [Doc. 29.] The Court subsequently granted her request for an extension to respond to the motion. [Doc. 62.] She eventually filed a response that included over fifty pages of exhibits. [Docs. 71–73.] The Court thus concludes she has had sufficient time to conduct discovery and that her Rule 56(f) request is moot.

[2] Specifically: **Count I** ("*Respondeat Superior* and Vicarious Liability"); **Count II** ("Negligence of Defendant Bennett Trucking, Bennett International Group, Inc. and McDow as an Agent of Employee of Defendant Trucking and Bennett International Group, Inc."); **Count IV** ("Intentional Torts of Assault

1

against Bennett that depend on holding Bennett vicariously liable for Mr. McDow's conduct.

The Court concludes that Mr. McDow was an independent contractor, not an employee or agent of Bennett.  Accordingly, all claims that rely on holding Bennett vicariously liable for Mr. McDow's conduct must be dismissed.

Three of the six vicarious liability claims allege that Bennett is liable for the intentionally tortious conduct of Mr. McDow:  Counts IV, V, and VII.  With respect to these claims, the Court concludes, in the alternative, that to the extent Mr. McDow was an agent or employee of Bennett, his alleged intentionally tortious conduct was not committed within the scope of employment.  Accordingly, all claims asserting that Bennett is vicariously liable for the intentionally tortious acts of Mr. McDow must be dismissed for the reason that the acts were not committed within the scope of his employment.

## II.   BACKGROUND

Mr. McDow was an owner-operator truck driver and an owner of his own trucking company, K&M Trucking, also a defendant in this case.  In December 2002, Mr. McDow entered into a contractual arrangement with Bennett, under which he agreed to provide transportation services in exchange for compensation.

On November 5, 2003, Mr. McDow was transporting a load under his contract with Bennett when he picked up Ms. Gonzales near Vaughn, New Mexico.  It is alleged that Mr. McDow stopped the vehicle near Carrizozo, New Mexico, where he bound Ms. Gonzales,

---

& Battery Against All Defendants");  **Count V** ("Intentional Tort of False Imprisonment Against All Defendants"); **Count VI** ("Negligence Against All Defendants"); and  **Count VII** ("Intentional Infliction of Emotional Distress Against All Defendants").  [Doc. 17 (Second Amended Complaint).]

threatened her with a knife, and sexually assaulted her.  Mr. McDow then allegedly abandoned Ms. Gonzales by the roadside on US Highway 54 between Alamogordo and Las Cruces.

Ms. Gonzales was rescued later that day by Otero County Sheriff's officers after they received a 911 call of a female lying on the side of the road.  Mr. McDow was apprehended by New Mexico State Police shortly thereafter.  He admitted having sexual contact with Ms. Gonzales, but claimed that it was consensual.  Mr. McDow was charged with criminal sexual penetration, criminal sexual contact, kidnapping, bribery of a witness, and tampering with evidence.

A jury found Mr. McDow guilty of false imprisonment (a lesser included offense of kidnapping) and tampering with evidence.  He was acquitted of the remaining charges and sentenced to three years incarceration.

## III.   DIVERSITY JURISDICTION

No party to this case has challenged the Court's jurisdiction to hear this matter. However, the Court must first satisfy itself that it does in fact have jurisdiction before proceeding to the merits.  *Lance v. Coffman*, __ U.S. __, 127 S.Ct. 1194, 1196 (2007); *Kennedy v. Lubar*, 273 F.3d 1293, 1301 n.10 (10th Cir. 2001).

Bennett removed this case to federal court approximately ten months after it was first filed in state court, alleging jurisdiction based on diversity of citizenship.  [Doc. 1.] Defendants McDow and K&M Trucking consented to the removal.  [Doc. 2.]

Ms. Gonzales is domiciled in New Mexico, Bennett is domiciled in Georgia, and

K&M Trucking is a California company.  At the time suit was filed, Mr. McDow was incarcerated in New Mexico. [Doc. 1-2 at 1.] It was upon the filing of Mr. McDow's answer to the amended complaint that Bennett says it learned for the first time that he claimed to be domiciled in California, rather than in New Mexico.  [Doc. 1, ¶¶ 2–4.]

Diversity jurisdiction is determined at the time suit is filed.  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478, 123 S.Ct. 1655, 1662 (2003).  For purposes of diversity jurisdiction, an individual's state citizenship is equivalent to his domicile.  *Smith v. Cummings*, 445 F.3d 1254, 1259 (10th Cir. 2006).  Domicile is a voluntary status determined by an individual's intent to remain in a particular state.  *Smith*, 445 F.3d at 1260.  Because incarceration is involuntary, a prisoner is presumed to be a citizen of the state where he resided prior to his incarceration.  *Smith*, 445 F.3d at 1260.  The presumption, however, is rebuttable.  *Smith*, 445 F.3d at 1260.

The allegation that Mr. McDow was a resident of New Mexico at the time suit was filed apparently is based solely on the fact that he was incarcerated in New Mexico when suit was first filed.  In her first amended complaint in state court Ms. Gonzales alleged that Mr. McDow "is a resident of the State of California and was, at the time of filing of the original complaint, a resident of Valencia County [New Mexico]." [Doc. 1-2 at 12.] It is undisputed that Mr. McDow lived in California before he was incarcerated, and that he returned there upon completing his sentence.  It also has never been disputed that he intends to remain in California.  [Doc. 1-2 at 24 (McDow's answer denying New Mexico residency and affirmatively averring that he "has always been a resident of the State of California"); doc.

72 at 1 (Plaintiff's exhibit showing McDow resided in California in 2003).] A presumption thus arises that he is domiciled in California.

No party has challenged the allegations supporting diversity jurisdiction, nor has any party attempted to rebut the presumption that Mr. McDow is domiciled in California. Accordingly, the Court concludes that Mr. McDow is domiciled in California for purposes of diversity jurisdiction and that there is complete diversity of citizenship among the parties.

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id.

In ruling on a motion for summary judgment, the Court does not weigh the evidence and determine the truth of the matter, but simply determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. Judgment is appropriate as a matter of law if the nonmoving party has failed to make an adequate showing on an essential element of

his case, as to which he has the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986); *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

## V.     ANALYSIS

Bennett moves for summary judgment on the six counts that depend on holding it

vicarious liable for Mr. McDow's conduct.  The determination turns on whether Mr. McDow

was an employee or agent of Bennett, or whether he was an independent contractor.

### A.     Law regarding vicarious liability

Unless an exception applies, the employer of an independent contractor generally is

not liable for harm caused to another by an act or omission of the contractor.  *Hansler v.

Bass*, 743 P.2d 1031, 1034 (N.M. Ct. App. 1987).  New Mexico employs an agency analysis

that looks at the purported principal's right to control the details of the work.  *Celaya v. Hall*,

85 P.3d 239, 242–43 (N.M. 2004).

Right to control, however, is only one factor among several that may figure into the

employee versus independent contractor calculus.  *Celaya*, 85 P.3d at 242–43.  Other

considerations include: 1) the type of occupation and whether it is usually performed without

supervision; 2) the skill required for the occupation; 3) whether the employer supplies the

instrumentalities or tools for the person doing the work; 4) the length of time the person is

employed; 5) the method of payment, whether by time or job; 6) whether the work is the part

of the regular business of the employer; 7) whether the parties intended to create an

employment relationship; and 8) whether the principle is engaged in business.  *Celaya*, 85

P.3d at 243 (adopting factors from the Restatement (Second) of Agency § 220(2)(a–j)).

6

A complete analysis may require consideration not only of the relevant Restatement factors listed above, but also other circumstances unique to the particular case.  *Celaya*, 85 P.3d at 243.  With these principles in mind, the Court will now proceed to analyze the factors raised by the parties and that are apparent in the record.

**B.      The contract between Mr. McDow and Bennett indicates an independent contractor relationship.**

The written contract between Mr. McDow and Bennett is the starting point for the analysis.  It is titled "Independent Contractor Owner/Operator Agreement" and is replete with references to Mr. McDow's independent contractor status.  [Doc. 24-2.][3]

Contractual provisions are not necessarily determinative, and the Court must also review the facts to evaluate whether Ms. Gonzales has raised a triable issue as to whether Bennett may be held vicariously liable for Mr. McDow's conduct.  *See Houghland v. Grant*, 891 P.2d 563, 566 (N.M. Ct. App. 1995).  In this case, the undisputed facts are consistent with the terms of the contract, and conclusively demonstrate that an independent contractor relationship existed.

First, Mr. McDow owned the equipment that was used in providing the transportation services.  [Doc. 24-2 at 1, 3.]  He also was responsible for paying the vehicle's operation and maintenance costs, loss or damage to the vehicle, taxes, fines and penalties, and insurance.

---

[3]Although Bennett has not properly authenticated this document, its authenticity is not disputed by Ms. Gonzales.  She cites to the contract, and apparently intended, but omitted to attach it as Exhibit D to her brief.  [Doc. 71 at 5 (referencing but failing to attach "Employment Contract").]  She also relies on the contract to some extent in her opposition to Bennett's other Motion for Partial Summary Judgment. [Doc. 76 at 7–15 (Plaintiff's Ex. E).]

[Id. at 3, 4, 5, 6.]

Second, Mr. McDow was compensated by the job.  This fact is undisputed.  Payment by the job, rather than by the hour, is a strong indication that the person performing the work is an independent contractor, not an employee.  Restatement (Second) of Agency § 220 cmt. j (1958).

Third, Mr. McDow had the right to reject any freight Bennett tendered to him for transportation.  [Doc. 24-2 at 4.]  He also had the option to do the driving himself or to furnish his own employees to drive.  [Id.]  These facts also are undisputed.

Finally, the contract between Bennett and Mr. McDow indicates that Bennett did not have the right to control the details of Mr. McDow's performance.  Both Bennett and Mr. McDow are understood to be subject to federal regulation.  [Doc. 24-2 at 4.]  The contract requires Mr. McDow to assist Bennett in complying with all laws and regulations by, among other things, filing log sheets daily.  [Id.]  However, Bennett assumes only such control as is required to comply with the regulations, but otherwise has no right to "control the manner nor prescribe the method" of Mr. McDow's performance.  [Id.]

## C.    Other factors indicating an independent contractor relationship

Other factors, in addition to those set forth in the contract, indicate that Mr. McDow was an independent contractor.  First, Mr. McDow, who is *pro se* in this matter, agrees with Bennett that he was an independent contractor and not subject to any right of control by Bennett. [Doc. 107.] Furthermore, in his answer to Plaintiff's amended complaint, he states that he "contracted [with Bennett] as an independent owner-operator" and that "K&M

8

Trucking was an independent business owned and operated by...McDow." [Doc. 1-2 at 25, 27.]  In response to deposition questioning regarding whether Bennett prohibited him from picking up hitchhikers such as Ms. Gonzales, Mr. McDow stated:  "I said I think Bennett was probably not happy about it probably when they eventually heard about it.  But you know, it was my truck, and I didn't see no harm in it."[4]  [Doc. 72 at 17.]

Second, Mr. McDow was free to work for carriers other than Bennett.  [Doc. 72 at 24; doc. 87-2 at 3 (deposition of Albert Hibbs, Bennett's Director of Safety).]  He was also free not to work at all.  [Doc. 87-2 at 20 (McDow depo.).]  Ms. Gonzales argues that Mr. McDow had such a high level of income ($57,000) from Bennett that he had no incentive to seek work from other carriers.  [Doc. 71 at 7.]  The allegation that Mr. McDow had no reason to work for other carriers, aside from being unsupported by competent summary judgment evidence, is irrelevant to the fact that Bennett was unable to prohibit him from doing so.

Another factor strongly indicating independent contractor status is that Mr. McDow's income from Bennett was reported on a Form 1099.  [Doc. 73 at 11 (Plaintiff's Ex. G).].  Independent contractor and nonemployee compensation is reported on a 1099, while employee income typically is reported on a W-2.  *Taylor v. ADS, Inc.*, 327 F.3d 579, 581 (7th Cir. 2003) (owner-operator trucker whose payments were reported on 1099, rather than W-2, was an independent contractor); *Lerohl v. Friends of Minn. Sinfonia*, 322 F.3d 486, 492 (8th Cir. 2003) (use of Form 1099 is "highly significant" to show musician was not an employee);

---

[4]See also excerpts from Mr. McDow's deposition attached to Plaintiff's opposition to Bennett's other motion for partial summary judgment, in which Mr. McDow states:  "Bennett never told me any- -- you know...it's my truck, and who I pick up in my truck is usually my own business."  [Doc. 75 at 20.]

*Parsells v. Manhattan Radiology Group, LLP*, 255 F.Supp.2d 1217, 1230 (D. Kan. 2003) (finding use of Form 1099 rather than W-2 to report earnings "significant" to show radiologist was an independent contractor, not an employee).

### D.     Absence of evidence that Bennett controlled Mr. McDow

Despite the terms of the contract and the undisputed facts, Ms. Gonzales claims that Bennett had an "unconditional right to control and direct" Mr. McDow.  [Doc. 71 at 11.]  She asserts several "additional facts" and arguments in support of her position that Bennett had an "absolute right to control" Mr. McDow's activities as a driver.

As discussed below, many of these "additional facts" are not supported by the record. To the extent Ms. Gonzales has submitted competent summary judgment evidence, it is not sufficient to raise a fact issue as to Mr. McDow's independent contractor status.

### 1.     Evidence that Mr. McDow was required to submit trip logs and to call in

Ms. Gonzales claims Bennett's right to control Mr. McDow is demonstrated by evidence that he was subject to "the same policies and procedures to which company drivers were subject."  [Doc. 71 at 2, 11.]  Ms. Gonzales, however, has not presented any evidence as to what were Bennett's employee policies.

She has submitted evidence of two contractual requirements imposed on Mr. McDow, but there is no evidence that Mr. McDow was required to comply with "all" Bennett employee policies and procedures.  The two requirements reflected in the record are that Mr. McDow was required to submit trip logs and to call in daily.  [Doc. 72 at 13–14.]

10

Evidence that Bennett required Mr. McDow to submit logs and call in when he was transporting a load for Bennett is not sufficient to raise a genuine issue of material fact that it was exercising control in a manner consistent with the status of employee.  Submission of trip logs is a contractual duty imposed on Mr. McDow to facilitate Bennett's compliance with the law.  [Doc. 24-2 at 4 (contract); doc. 87-2 at 3 (Hibbs depo.).]  There is no explanation of the purpose of the call-in requirement, but this simple requirement is not sufficient to raise a fact issue.  Even if there were evidence that Bennett imposed the same requirements on its employee drivers, it would not be sufficient to raise a fact issue.  These appear to be simple reporting requirements to facilitate compliance with state and federal regulations given that Mr. McDow was transporting a load under Bennett's DOT authority. *See, e.g.*, *Narayan v. EGL, Inc.*, No. C-05-04181 RMW, 2007 WL 2021809, *9 (N.D. Cal. July 10, 2007) (requirement that truck drivers comply with regulatory and safety requirements and general company policies not sufficient to show drivers were employees). No reasonable jury could find, based on these two requirements, that Mr. McDow was an employee.  *See Anderson*, 477 U.S. at 252  (summary judgment is proper if no fair minded jury could return a verdict for the plaintiff on the evidence presented).

### 2.    Evidence that Bennett obtained permits

Ms. Gonzales claims that Bennett controlled Mr. McDow because it arranged to obtain the state permits necessary to transport the load he was hauling.[5]  [Doc. 72 at 28 (Hibbs' deposition).]  It does not follow, however, that Bennett controlled Mr. McDow

---

[5]Mr. McDow was transporting a Nextel building for cell towers.  [Doc. 72 at 25.]

merely because Bennett obtained the necessary permits. As further explained by Mr. Hibbs, this was not a choice made by the parties to the contract, but a requirement of state and federal law. According to Mr. Hibbs, the state issues permits only to carriers who have DOT authority. [Id. at 30.] Bennett is an authorized carrier, Mr. McDow was not. [Id. at 28.]

Ms. Gonzales does not rebut the contention that permits were required to transport the load through various states and that only Bennett had Department of Transportation authority to obtain them. Even if this contention were challenged, the fact that Bennett applied for and obtained the permits does not create a triable issue. Obtaining permits of this type, which allow the work to proceed, does not equate to controlling the manner in which the work is performed.

### 3.    Evidence that Mr. McDow obtained insurance through Bennett

Ms. Gonzales claims that Mr. McDow was not solely responsible for insurance because Bennett helped him obtain comprehensive insurance on the vehicle. She points to testimony by Mr. Hibbs that Mr. McDow obtained insurance through a company that rents office space from Bennett and that a separate policy was not written for him. [Doc. 72 at 27–28.]

What Ms. Gonzales does not dispute, however, is that Mr. McDow was responsible for paying for the insurance and that he had the right to obtain it from the company or agent of his choosing. Mr. Hibbs testified that Bennett's contractors may obtain insurance from whomever they choose so long as they present proof of insurance. He explained that contractors may buy insurance through its system as a matter of convenience. Bennett could

arrange to deduct the premiums from their payments so the contractors do not have to "mess with a bill." [Doc. 72 at 26; doc. 87-2 at 15.] The contract also provides that Bennett may deduct authorized insurance charges from payments due to the independent contractors. [Doc. 24-2 at 4.] The record is undisputed that Mr. McDow was responsible for his own insurance. Because Bennett may have provided a convenient mechanism for Mr. McDow to obtain insurance does not mean that it controlled him or his work.

### 4.   Evidence that Bennett paid Mr. McDow fuel advances

Ms. Gonzales argues that Mr. McDow was not responsible for fuel expenses because Bennett occasionally paid him a fuel advance. However, that Bennett may have advanced fuel costs to Mr. McDow does not mean that Bennett was responsible for the cost of fuel. The contract expressly acknowledges that Bennett may advance certain costs, such as fuel, to its contractors and that is shall be reimbursed if it does. [Doc. 24-2 at 4, 5.] Mr. McDow acknowledged that fuel advances were available on a "com data card" and that he sometimes used them and sometimes did not. [Doc. 72 at 15.]

These circumstances do not create a fact issue as to whether Mr. McDow was responsible for the cost of fuel. The undisputed evidence demonstrates that he was responsible for paying for his fuel, though he may have occasionally accepted fuel advances from Bennett.

### 5.   Control over trucking routes

Ms. Gonzales asserts that Bennett controlled Mr. McDow's trucking routes. There is no evidence presented to support this allegation. To the contrary, Mr. Hibbs testified that

13

Mr. McDow could "pick and choose his own routes from Point A to Point B." [Doc. 72 at 28.] To the extent Mr. McDow was required to adhere to a particular route, it was the state, not Bennett, that imposed the requirement. [Doc. 72 at 28 (Hibbs depo.); doc. 87-2 at 19 (McDow depo.).] The fact that Mr. McDow's contract could be terminated if he deviated from the permitted route does not demonstrate that he was a Bennett employee; it demonstrates that Bennett expected its contractors to comply with permits and transportation laws.

### 6. Work for other carriers

There is no evidence to support Ms. Gonzales' claim that Mr. McDow "drove for no other trucking companies while working for Defendant Bennett." Ms. Gonzales points to testimony by Mr. McDow that "[u]nder no circumstances can I pick up a load from somebody else....I didn't go looking out for other brokers, no." [Doc. 72 at 16.] When viewed in context with the question he was responding to, however, it is clear Mr. McDow was stating that he was not to pick up freight for a broker without authorization. Mr. McDow's testimony does establish that he was prohibited by Bennett from working for other carriers.

### E. Ms. Gonzales has failed to raise a jury question regarding Mr. McDow's status as an independent contractor

Ms. Gonzales asserts that a number of other "additional facts" and arguments support her claim that Mr. McDow was an agent or employee of Bennett. First, Ms. Gonzales claims that the large number of owner/operators employed by Bennett compared to the small

number of company drivers is "especially probative." [Doc. 71 at 2.] It is not clear why Ms. Gonzales believes this fact is probative and she has cited no authority that would indicate that the Court should consider the ratio of owner/operator drivers to employees relevant to the analysis. To the extent it is relevant, this fact tends to support the conclusion that Bennett is an "owner/operator" company that clearly distinguishes the small number of drivers that it retains as employees from the large number of owner/operators it retains as independent contractors.

Second, Ms. Gonzales claims that Mr. McDow "utilized and displayed Defendant Bennett's door decals, placards and base plates." It is not clear that utilization or display of these items indicates that Mr. McDow was an employee of Bennett. Ms. Gonzales cites no authority, nor does she make any argument based on the alleged display of decals, placards and baseplates. In any event, she has failed to adduce any competent evidence that Mr. McDow displayed or utilized these items. Exhibit M that she submits in support of her allegation is an unauthenticated document that appears to be a "form" memorandum terminating the contract between Bennett and Mr. McDow for "breach of contract terms." It states, among other things, that Mr. McDow should return all door decals, placards and baseplates to Bennett. [Doc. 73 at 25.] It does not establish that Mr. McDow actually displayed these items.

Ms. Gonzales relies on *Matson by Kehoe v. Anctil*, in which a court applying Quebec law found that a fact issue precluded summary judgment on the independent contractor/employee issue. *Matson by Kehoe v. Anctil*, 7 F.Supp.2d 423 (D.Vt. 1998). A

number of factors were present in that case that are not present here, however, such as: the vehicle was registered in the employer's name, displayed the employer's name and DOT number, and the purported independent contractor was required to sign a document as an employee before he would be permitted to transport goods on the employer's behalf. *Matson by Kehoe*, 7 F.Supp.2d at 425.   By contrast, the present record here reflects numerous undisputed elements persuasively demonstrating that Mr. McDow was not an employee.

Finally, Ms. Gonzales asserts that, despite the terms of the contract Mr. McDow "held himself out as an employee of Bennett Trucking in arranging financing for his vehicle." [Doc. 71 at 2.]  In support of this claim, she submits the affidavit of Rodney Sanders, the corporate credit and collections manager for Temco Financial.  [Doc. 72 at 1–11.]  Mr. McDow applied to Temco Financial for the financing of his truck.  [Id. at 1.]  Sanders states in his affidavit:

> On Mr. McDow's Credit Application, McDow indicated that he worked for Bennet[t] Motor Express....He did not indicate that he worked for any other trucking companies. In processing his application, he also told me that he worked for Bennett and that he would be driving for them in the 48 states.

[Id. at 2.]  The Credit Application, or a portion of it, is attached as an exhibit to Sanders' affidavit.  [Id. at 6.]

There is nothing in Sanders' affidavit or the Credit Application that is inconsistent with Mr. McDow's independent contractor status.  Mr. McDow did not state on the Credit Application that he was an employee of Bennett, and did not list Bennett under "Employment History."  Instead, Bennett is named in the "Truck to Work For" space.

Furthermore, any representations Mr. McDow may have made in connection with the financing of his truck has no nexus to the conduct at issue here. "Respondeat superior liability applies only when the employer-employee relationship existed in respect to the very thing from which the injury arose." *Hansler*, 743 P.2d at 1035. Ms. Gonzales was not harmed by statements in Mr. McDow's credit application to Temco Financial. Thus, statements he may have made in connection with the financing of his vehicle are not relevant.

To the extent that Ms. Gonzales is attempting to make an apparent authority argument on the grounds that Mr. McDow "held himself out" as an employee of Bennett, the argument misses the point. The doctrine of apparent authority does not govern or explain the application of respondeat superior. Restatement (Third) of Agency Introduction (2006).

In sum, though the parties' characterization of the relationship is not necessarily determinative, in this case it is consistent with the undisputed facts. Ms. Gonzales has either conceded or failed to dispute with competent evidence the factors establishing Mr. McDow's independent contractor status.[6]

### F.     Scope of Employment

Bennett argues, in the alternative, that even if Mr. McDow was an agent or employee, he was acting outside the scope of his employment when he assaulted Ms. Gonzales.[7] Under basic respondeat superior principles, an employer is only liable for the torts an employee

---

[6] There are exceptions to the rule that employers are not liable for the acts or omissions of their independent contractors, but Ms. Gonzales has not argued for, nor identified any applicable exception.

[7] Bennett's argument regarding scope of employment is confined to those counts that allege intentional torts, in this case: Count IV (assault and battery), Count V (false imprisonment), and Count VII (intentional infliction of emotional distress). The Court's discussion is limited accordingly.

commits within the scope of his employment. *Los Ranchitos v. Tierra Grande*, Inc., 861 P.2d 262, 267 (N.M. Ct. App. 1993).   An act of an employee is within the scope of employment if:

> 1.   It was something fairly and naturally incidental to the employer's business assigned to the employee, and

> 2.   It was done while the employee was engaged in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee.

UJI 13-407 NMRA 2007.

An employer typically is not liable for the intentional torts of an employee because an employee who intentionally injures another individual is generally considered to be acting outside the scope of employment. *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 70–71 (2004). An intentional or criminal act can be within the scope of employment, but the circumstances are rare. *Compare Gonzales v. Sw. Sec. & Prot.*, 665 P.2d 810, 812 (N.M. Ct. App. 1983) (employer vicariously liable for assault committed by employee security guards with night sticks provided by employer), *with Miera v. George*, 237 P.2d 102, 105–06 (N.M. 1951) (where grant of authority to agent did not contemplate use of force, principal was not liable for assault committed by agent), *Los Ranchitos*, 861 P.2d at 268 (clerical worker's embezzlement was activated by personal motives and employer therefore was not vicariously liable) (collecting cases), *and Valdez v. Warner*, 742 P.2d 517, 518 (N.M. Ct. App. 1987) (bar owner was not vicariously liable for actions of employee who was furthering his own interests when he assaulted customer).

18

Ms. Gonzales urges application of the three-part *Lessard* scope of employment test. [Doc. 71 at 14–15.] However, the *Lessard* test is a customized version of the general scope of employment text that the New Mexico Court of Appeals has adapted specifically for use in determining whether "to impose vicarious liability on an employer for an employee's negligent actions in driving a personal vehicle to and from work." *Lessard v. Coronado Paint & Decorating Cent.*, 168 P.3d 155, 162 (N.M. Ct. App. 2007). It is inapplicable to this case which does not involve an auto accident or negligent operation of a vehicle. This case involves, for the most part, allegations of intentional and criminal conduct.

To the extent Ms. Gonzales is attempting to assert an "aided-in-agency" theory, the argument is not supported by the record. "Under the aided-in-agency theory, an employer may be held liable for the intentional torts of an employee acting outside the scope of her or her employment if the employee 'was aided in accomplishing the tort by the existence of the agency relation.'" *Ocana*, 91 P.3d at 71 (quoting Restatement (Second) of Agency § 219(2)(d)(1958)). Here, there is no evidence that Mr. McDow was able to commit the alleged torts by virtue of his relationship with Bennett. In other words, Ms. Gonzales does not claim his status as a driver for Bennett aided him in committing the alleged torts.

Ms. Gonzales also argues that Bennett can be held vicariously liable under the apparent agency doctrine because he held himself to third parties as an employee of Bennett. [Doc. 71 at 17.] The doctrine of apparent authority provides:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the

negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

*Houghland*, 891 P.2d at 567 (quoting Restatement (Second) of Torts § 429 (1965)).

The principles of apparent authority have no application here. Bennett was not performing services for Ms. Gonzales. Furthermore, as discussed above, there is no connection between Mr. McDow's statements on his credit application to Temco Financial and his tortious conduct involving Ms. Gonzales. Thus, even if Mr. McDow's representations to Mr. Sanders would have justified Temco Financial's reliance on his apparent authority, there is no connection with or relevance to Ms. Gonzales. In short, the issues presented by Ms. Gonzales' claims against Bennett do not involve a question of reliance on the apparent authority of Mr. McDow.

To impose respondeat superior liability on Bennett, it is not sufficient that Mr. McDow was engaged in transporting freight for Bennett; he must also have been attempting to further Bennett's interests by his tortious conduct, and he must not have been motivated by self interest.

Ms. Gonzales does not contend that Mr. McDow was furthering Bennett's interests by committing the intentionally wrongful acts alleged here. Indeed, it is difficult to envision any circumstances under which the conduct she alleges could be said to further an employer's interests. In sum, no reasonable jury could find that Mr. McDow was acting on anything other than his own independent and personal motive when he committed the alleged assault and other intentional torts upon Ms. Gonzales.

20

VI.     **CONCLUSION**

The Court concludes that Bennett's motion should be **GRANTED**.

**IT IS, THEREFORE, ORDERED** that *Defendants Bennett International Group,*

*Inc. and Bennett Motor Express, Inc.'s Motion for Partial Summary Judgment* [Doc. 23] is

**GRANTED.**  Counts I, II, IV, V, VI, and VII are dismissed **with prejudice**.

**SO ORDERED** this 30th day of March 2008**,** in Albuquerque New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

21